Thurman, C. J.
The main questions in this case, were decided by this court,' at December term, 1853. See 2 OhioSt. 373. It was then decreed that certain conveyances of Matthias Kugler, sen., were void as against all persons who were his creditors at the date of their execution, and whose claims yet subsist, and the cause was referred to a master, to ^ascertain who were such creditors, [547 and the amounts now due to them. The master has made his report, and several questions arise upon it.
One of the conveyances above mentioned was of certain lands, called “The East Liberty property,” and was made to Matthias. Kugler, Jun., and George W. Schultz. A part of the consideration for this conveyance, was an agreement by the grantees, to pay the debts due by the grantor at the mills and distillery, upon the property conveyed. To secure performance of this agreement they reconveyed the property, by way of mortgage, in which some of the debts’were specifically named, and others merely referred to, without description, as specified in a certain schedule. This mortgage, with the exception of the schedule, was duly recorded; but the schedule has never been recorded or delivered to the recorder. Subsequently, and before the bringing of this suit, Schultz and young Kugler, doing business as partners under the firm name of Schultz & Kugler, mortgaged a portion of the *548 property to Evans & Swift, to secure a loan; and to make tbe security perfect, M. Kugler, Sen., executed a release of the lien of his mortgage on the property covered by the mortgage of Evans & Swift. Under a decree of foreclosure and sale, rendered upon this latter mortgage since the commencement of this suit, the property embraced in it has been sold to Evans & Swift, the sale confirmed, and a deed made. It does not appear that Evans & Swift, when they took their mortgage, had any knowledge of the debts mentioned in the schedule referred to in the mortgage to M. Kugler, Sen. Nor does it appear that they had any knowledge of the facts, which impeach the conveyance aforesaid, to Schultz & Kugler.
Prior to the commencement of this suit, some of the schedule creditors surrendered the evidences of their claims upon M. Kugler, Sen., and, in lieu thereof, took the promissory notes of Schultz & Kugler, which remain unpaid.
In his answer and cross bill, M. Kugler, Son., prays for a decree 548] of foreclosure and sale upon his mortgage, to which *no objection is made by Schultz & Kugler, but they insist that the decree shall not include the claims for which they gave their own notes, as aforesaid.
Evans & Swift also insist that it shall not embrace the lands covered by their mortgage.
The complainants insist that both these objections should be overruled.
On the part of Schultz & Kugler it is contended, that by surrendering the evidences of Jtf. Kugler, Sen.’s, indebtedness, and taking, in lieu thereof, the notes of Schultz & Kugler, the persons doing so released M. Kugler,'Sen., from all liability, and are consequently no longer his creditors. That, therefore, they have no claim to relief on the ground that his conveyance to Schultz & Kugler was fraudulent; the court having already- decreed that that conveyance is good as against all but subsisting creditors. Nor have they, it is said, any rights by virtue of the mortgage to M. Kugler, Sen.; for that mortgage, it.is argued, is a mere indemnity of the mortgagee against the debts therein specified or referred to ; and, ho having been discharged, as above, from the claims in question, the mortgage is pro tanto, satisfied.
Of the correctness of so much of this argument as denies a right to impeach the conveyance to Schultz & Kugler, we have no *549 «doubt. Had the creditors retained the evidences of their claims; upon M. Kugler, Sen., the presumption would be that the notes of Schultz & Kugler were taken as collateral securities; but as they surrendered these evidences when they took the notes (and they were notes of third persons, it is to be remembered), the presumption is just the contrary.
But to the argument that denies any benefit from the mortgage to M. Kugler, Sen., we are by no means prepared to assent. For ¡a valuable consideration received from him, Schultz & Kugler agreed to pay these debts. To secure their payment they gave this mortgage. By taking their notes, and discharging the elder Kugler, these creditors assented to the arrangement. And they* thereby, as before said, precluded themselves from impeaching his -conveyance. *That this was done with an understanding [549 that they were to have the benefit of the mortgage, is fairly presumable. That, under these circumstances, they are entitled to have all the securities, for the payment of this money, that M. Kugler, Sen., had, is, we think, well settled. We can not regard the ¡mortgage as amere indemnity, in which no one but M. Kugler, Sen., could have any interest. It originated in an arrangement, one of whose objects was the payment of these debts. It was the understanding of the parties that they were to be paid; for honest men could have no ' other .understanding. Upon their verbal promise to pay them, made to M. Kugler, Sen., the promissors probably became liable to actions by the creditors. If, for a valuable consideration, A promise B to pay C a sum of money, C may xecover it in an action of assumpsit against A. 1 Cbitty’s PI. -4-6. The mortgage to secure prerformance of the promise, ought (in favor of a creditor assenting to the arrangement and giving up his original claim) to be as liberally construed in equity as the-promise itself.
, We are therefore of opinion that these parties, who took the notes of Schultz & Kugler, have a right to be paid out of the proceeds to be realized from a sale of the mortgaged premises ; and not only so, but that they should be first paid. For this is their only security, while the creditors who did not assent to the arrangement, and who are therefore not precluded from impeaching the conveyances of M. Kugler, Sen., have, in addition to this, other and ample securities.
We think the property mortgaged to Evans & Swift ought not *550 to be included in the decree of sale. They are Iona fide purchasers, for a valuable consideration, without notice of any of the equities of the complainants, except so far as they are affected by the record of the mortgage to M. Kugler, Sen. It is only then, by disregarding his release and giving his mortgage priority over theirs, that their property can be released. But, independent of the release, we are not quite sure that this can be done. The creditors who insist upon 550] including their property are schedule creditors. *But the schedule has never been recorded, and hence arises a very serious question, whether the record is any notice of the debts named in that instrument. That there may be a sufficient general description of debts in a mortgage, no one will doubt; but when there is no description at all, but only a reference to a schedule, it is well worthy of consideration, in the light of the authorities, whether the schedule must not be deemed and recorded as a part of the mortgage.
It is unnecessary, however, to decide this question, as the means to pay all the creditors who are entitled to payment by the terms of our former decree, will be quite sufficient without resorting to the property of Evans & Swift.
Another branch of the case remains to be disposed of. About the time M. Kugler, Sen., made his conveyances, he entered into a partnership with his son, Jacob Kugler, at a place called (Germany. This partnership existed until February, 1848, when it was dissolved, and the business was subsequently continued by the father alone. It does not appear that young Kugler brought anything into the partnership, or that he took any thing out of it. For aught that we see, the firm was merely nominal.
During the existence of this partnership, some of the complainants, who were creditors of M. Kugler, Sen., at the date of his conveyances, took the notes of the firm of Kugler & Son, for the. amounts due them, some of which notes were subsequently, and after the dissolution of the firm, given up, and notes of the old gentleman again taken in lieu thereof.
A question is now made, whether the debts, due by M. Kugler, Sen., at the date of his conveyances, were discharged by the taking of the notes of Kugler & Son, and much stress is laid upon the fact that the original evidences of indebtedness were probably surrendered when the new notes were given.
Under all the circumstances, we think this question must be an *551 ewered in the negative. We think the 'transaction was intended-simply as a renewal. It does not militate against *this idea [551 that Jacob Kngler became bound as well as his father; for a note-with security may as well be a renewal of a former note aa one without security.
«This case is very different from that at East Liberty. There, there was no attempt to retain the liability of M. Kugler, Sen. He was no party to the paper of Schultz & Kugler that was taken in lieu of his. But here his liability never ceased. The only change made was in the evidences of indebtedness, and by the addition of' another promisor. •
Upon the whole, we are of opinion that the claim of these complainants is not prejudiced by their having taken the new notes.